# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN DOE 1–5, On behalf of
themselves and all others similarly
situated,

     Plaintiffs,

v.

GRETCHEN WHITMER, Governor
of the State of Michigan, Richard
Snyder, former Governor of the State
of Michigan, COL. JOSEPH
GASPAR, Director of the Michigan
State Police, and Kriste Etue, former
Director of the Michigan State Police,
in their individual capacities,

     Defendants.

Case No.

Hon.

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

_____/

OLIVER LAW GROUP PC
Alyson Oliver (P55020)
Cameron Bell (P81934)
Christopher Brown (P83439)
Paul Matouka (P84874)
Attorneys for Plaintiffs
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com

_____/

1

NOW COME JOHN DOES 1–5, by and through their attorneys, OLIVER LAW GROUP PC and in support of their Class Action Complaint and Jury Demand and state as follows:

## **INTRODUCTION**

1. This is a class action complaint filed for damages on behalf of John Does 1–5, on behalf of themselves, and all those similarly situated against Defendants GRETCHEN WHITMER, Governor of the State of Michigan, RICHARD SNYDER, former Governor of the State of Michigan, KRISTE ETUE, former Director of the Michigan State Police, and COL. JOSEPH GASPAR, Director of Michigan State Police, in their personal capacity, who allege as follows:

2. Michigan's Sex Offenders Registration Act (SORA), M.C.L. § 28.721 et seq. was enacted in 1994. The law required persons convicted of certain offenses to register; to prohibit certain individuals from engaging in certain activities within a student safety zone; to prescribe the powers and duties of certain departments and agencies in connection with that registration; and to prescribe fees, penalties, and sanctions.

3. In 2015, a Michigan Federal District Court held: (1) that SORA's prohibitions on working, residing, or loitering in exclusion zones were unconstitutionally vague; (2) that certain of SORA's reporting requirements were unconstitutionally vague; (3) that imposing strict liability for SORA

2

violations violates due process (and therefore  SORA must be read to incorporate a knowledge requirement); and (4) that the requirement to report certain electronic identifiers immediately violates the First Amendment. *See Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015).

4. In a subsequent opinion, *Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D.Mich. 2015), this Court further held that the retroactive incorporation of the lifetime registration obligation to report certain electronic identifiers also violated the First Amendment.[1]

5. In 2016, the Sixth Circuit Court of Appeals in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) held that SORA imposed punishment and that the retroactive application of SORA's 2006 and 2011 amendments violates the U.S. Constitution's Ex Post Facto Clause.

6. Yet for years after *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), the State of Michigan continued to subject tens of thousands of registrants to retroactive punishments, Due Process violations and First Amendment infringements under SORA.

---

[1] The Sixth Circuit reversed this Court's earlier decision, which had granted the state's motion to dismiss as to the plaintiffs' ex post facto claim. See 932 F. Supp. 2d 803 (E.D. Mich. 2013), reversed by 834 F.3d 696 (6th Cir. 2016). The Sixth Circuit did not reach the issues decided by this Court in its twin 2015 decisions.

7. On February 10, 2020, in the class case of Does II this Court rendered an order granting Plaintiff's motion for permanent injunctive relief, prohibiting the State of Michigan from enforcing those provisions of SORA which violated Plaintiffs constitutional rights. *John Doe, et al. v. Rick Snyder, et al.*, No. 2:16-cv-13137 (E.D. Mich. Feb. 10, 2020).

8. 42 U.S. Code § 1983 provides: that every person under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

9. By, this action, Plaintiffs seek money damages arising from the unconstitutional retroactive provisions of SORA that plaintiffs, and all others similarly situated, were subjected to beginning from the 2006 amendments until the present day (or when reporting is no longer required).

## **PARTIES**

10. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

11. Plaintiffs John Does 1–5 are all individuals who were subjected to the unconstitutional provisions of SORA during the relevant time period of which

the unconstitutional provisions were in effect, who bring this action on behalf of themselves and class individuals who were required to register and comply with the unconstitutional provisions of SORA. Plaintiffs and others similarly were subjected to due process violations, retroactive punishments and first amendment infringement, along with suffering significant economic loss and emotional harm.

Defendants

12. Defendant GRETCHEN WHITMER is the Governor of the State of Michigan. She is sued in her individual capacity.

13. Defendant RICHARD SYNDER is the former Governor of the State of Michigan. He is sued in his individual capacity.

14. Defendant Colonel JOSEPH GASPAR is the director of the Michigan State Police. He is sued in his individual capacity.

15. Defendant, Colonel KRISTE ETUE was the director of the Michigan State Police. She is sued in her individual capacity.

16. Pursuant to Article 5, § 1 of the Michigan Constitution, the executive power of the state is vested in the governor. The Michigan Constitution further provides that the governor shall take care that applicable federal and state laws are faithfully executed. Mich. Const., Art. 5, § 8.

17. Defendant Whitmer is ultimately responsible for the enforcement of the laws of this state, and for supervision of all state departments, including the Michigan State Police.

18. Defendant Snyder was ultimately responsible for the enforcement of the laws of this state, and for the supervision of all state departments, including the Michigan State Police.

19. The Michigan State Police maintains Michigan's sex offender registry. M.C.L. § 28.721 *et seq*.

20. The State Police's responsibilities include enforcing SORA, maintaining the state's database of sex offenders, maintaining an online public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily required notices to registrants, collecting registration fees, and coordinating with national law enforcement and the national sex offender registry. See M.C.L §§ 28.724, 28.724a, and 28.725 *et seq*.

## FACTS

### History of the Michigan Sex Offender Registration Act

21. SORA imposed obligations, disabilities, and restraints that are so extensive that the Sixth Circuit found them to be a punishment.

22. It was not always so. Michigan passed its first sex offender registration law in 1994. Mich. Pub. Act 295 (1994) (eff. 10/1/95). Before that time, Michigan did not require anyone to register as a sex offender for any purpose.

23. The 1994 statute established a private law enforcement database containing basic information about people convicted of sex offenses. Registration information was exempt from all public disclosure. The statute did not require regular verification or reporting.

24. After the initial registration was completed, the only additional obligation was to notify local law enforcement within 10 days of a change of address. The registrant did not need to notify law enforcement in person. Mich. Pub. Act 295, Sec. 5(1)(1994). Registry information was maintained for 25 years for individuals convicted of one offense and for life for individuals convicted of multiple offenses. Mich. Pub. Act. 295, Sec. 5(3)-(4) (1994).

25. Since that time, the legislature repeatedly amended the statute, each time imposing a stricter regime with new burdens on registrants, covering more people and more conduct. The 2006 and 2011 amendments are particularly relevant.

26. The 2006 amendments (effective 1/1/06) retroactively barred registrants (with limited exceptions) from working, residing, or loitering within 100 feet of school property, and imposed criminal penalties for noncompliance. Mich.

Pub. Acts 121, 127 (2005). In addition, the penalties for registration-related offenses were increased. Mich. Pub. Act 132 (2005). Another amendment, which was also applied retroactively, allowed subscribing members of the public to receive electronic notification when a person registers or moves into a particular zip code. Mich. Pub. Act. 46 (2006).

27. In 2011, SORA underwent major revisions which fundamentally changed Michigan's sex offender registry. Mich. Pub. Act. 17-18 (2011).

28. First, the 2011 SORA amendments (effective 4/12/11) retroactively imposed extensive reporting requirements, requiring in-person and in some cases immediate reporting of vast amounts of personal information.

29. Second, the 2011 amendments retroactively categorized registrants into tiers. The tier classification determined the length of time a person must register and the frequency of reporting. Tier classifications were not based on, and did not correspond to, a registrant's actual risk of re-offending or the danger any registrant posed to the public.

30. Before 2011, most Michigan registrants were required to register for 25 years. As a result of the retroactive tier classifications, many registrants had their registration periods extended to life. There was no individualized determination about their risk or whether lifetime registration was warranted.

31. SORA severely restricted Plaintiffs' and putative class members' ability to speak freely on the internet. They were required to provide law enforcement with all electronic mail addresses, instant message addresses, log-in names, or other identifiers that are assigned to or routinely used by them. M.C.L § 28.727(1)(i). In addition, they were required to report in person within three days whenever they establish any electronic mail address, instant message address, or other designation used in internet communications or postings. M.C.L. § 28.725(1)(f).

32. SORA imposed penalties of up to 10 years imprisonment for violations of the Act. M.C.L. §§ 28.729(1); 28.734(2); 28.735(2).

33. This Court held in 2015 that SORA's provisions requiring reporting of telephone numbers, electronic mail and instant message addresses, and vehicle information were unconstitutionally vague.

34. Subsequently, in *Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015), the Court further held that the retroactive incorporation of the lifetime registration obligation to report certain electronic identifiers also violated the First Amendment.[2]

---

[2] The Sixth Circuit reversed this Court's earlier decision, which had granted the state's motion to dismiss as to the plaintiffs' ex post facto claim. See 932 F. Supp. 2d 803 (E.D. Mich. 2013), reversed by 834 F.3d 696 (6th Cir. 2016). The Sixth Circuit did not reach the issues decided by this Court in its twin 2015 decisions.

35. In 2016, the Sixth Circuit Court of Appeals in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) held that SORA imposed punishment and that the retroactive application of SORA's 2006 and 2011 amendments violates the U.S. Constitution's Ex Post Facto Clause.

36. Yet for years after *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), the State of Michigan continued to subject tens of thousands of registrants to retroactive punishments, Due Process violations and First Amendment infringements under SORA.

37. On February 10, 2020, in the class case of *Does II* this Court rendered an order granting Plaintiff's motion for permanent injunctive relief, prohibiting the State of Michigan from enforcing those provisions of SORA which violated Plaintiffs constitutional rights. *John Doe, et al. v. Rick Snyder, et al.*, No. 2:16-cv-13137 (E.D. Mich. Feb. 10, 2020) ("Does II").

38. Finally, on August 4, 2021, this Court issued a final judgment in *Does II* enjoining the enforcement of: 1) any provisions of the 2006 and 2011 SORA Amendments against the two ex post facto classes in that case; 2) any of the SORA provisions relating to student safety zones as unconstitutionally vague; 3) provisions relating to the disclosure of E-Mail addresses or other electronic messaging or communications usernames and login information. *See* **Exhibit**

**1,** *Does II*, Final Judgment, Case No. 2:16-cv-131137-RHC-DRG, p. *2–5 (E.D. Mich. Aug. 4, 2021).

39. Nevertheless, Defendants continued to require the Plaintiffs' and putative class members to comply with the unconstitutional provisions of the SORA act, with full knowledge of the Act's unconstitutionality, and punished those who did not.

40. Specifically, Defendants Gasper and Etue were both aware of the Act's unconstitutionality, based on several Federal Court rulings, and its continued enforcement by their subordinates. Despite knowing of these ongoing constitutional violation, Defendants Gasper and Etue failed to terminate the unconstitutional application of SORA by their subordinates.

41. The failure of Defendants Gasper and Etue to issue any directive, policy, memoranda, or other form of communication instructing their subordinates that the enforcement of the 2006 and 2011 SORA amendments was unconstitutional, despite the knowledge that it was, encouraged and implicitly authorized the continued violations of Plaintiffs' rights by the Michigan State Police and other law enforcement agencies.

42. The same is true of Defendants Snyder and Whitmer. Both Defendants Snyder and Whitmer were aware that SORA was unconstitutional, based on several Federal Court rulings, and that it was still being enforced by the Michigan

State Police. Despite knowledge of this ongoing constitutional violation, Defendants Snyder and Whitmer failed to terminate the unconstitutional application of SORA by their subordinates or issue and executive order, policy directive, or other communication instructing the Michigan State Police and other law enforcement agencies that the continued enforcement of the 2006 and 2011 SORA Amendments was unconstitutional.

43. Each of the named Plaintiffs were required to pay the annual $50 registration fee and registered with the Michigan State Police in 2018, 2019, 2020 and 2021.

44. Plaintiffs sustained new constitutional violations each time they were required to register or suffered a related injury resulting from the reporting and registration requirements, including but not limited to, the obligation to pay for the unconstitutional reporting and registration.

45. Defendants' unconstitutional conduct has caused significant mental and emotional harm to Plaintiffs by preventing them from participating in normal community and family life including:

46. Plaintiff John Doe 1 was:

    a.   Required to register four times a year until March 24, 2021. Annually, registration cost John Doe 4 $50, plus costs associated with traveling to register; and

b. Was denied a job in 2019 due to a failure to register conviction and because the job was potentially within the unconstitutional school safety zone.

47. Plaintiff John Doe 2 was:

a. Required to register four times a year between until March 24, 2021. Annually, registration cost John Doe 4 $50, plus costs associated with traveling to register.

48. Plaintiff John Doe 3 was:

a. Required to register twice a year until March 24, 2021. Annually, registration cost John Doe 3 $50, plus costs associated with traveling to the State Police to register; and

b. Confronted at his home twice yearly by Sheriffs demanding information on his living situation, personal information such as phone numbers, e-mail addresses, and online usernames.

49. Plaintiff John Doe 4 was:

a. Required to register two times a year until March 24, 2021. Annually, registration cost John Doe 4 $50, plus costs associated with traveling to register;

b. Forced to leave his apartment in 2018 because it was allegedly within the unconstitutional school zone exclusion area;

c. Unable to procure his own housing due to his inclusion on the SORA registry causing him to live in a hotel for two and a half months in 2018 at a rate of $1200 per month; and

d. Convicted of failure to register on three separate occasions, the most recent being in 2019 leading to him spending seven months in jail. This led to significant losses in wages and the obvious, unconstitutional, deprivation of liberty for seven months imprisonment and two years of probation.

50. Plaintiff John Doe 5 was:

a. Required to register four times a year until March 24, 2021. Annually, registration cost John Doe 5 $50, plus costs associated with traveling to register;

b. Prevented from purchasing a home in 2020 because it was allegedly within a student safety zone;

c. Prevented from obtaining employment because the job was allegedly within a student safety zone.

## **CLASS ALLEGATIONS**

51. The Plaintiffs bring this action on behalf of themselves, and all similarly situated persons pursuant to Fed. R. Civ. P.23(a) and 23(b)(2).

52. The Plaintiffs seek certification of a class, defined as: "those persons who were required to register under Michigan's SORA from January 1, 2006, the day the first unconstitutional SORA amendment went into effect, through March 24, 2021 when the Michigan Legislature amended SORA."

53. The proposed class is composed of five subclasses.

   a. Ex Post Facto Subclass – The Ex Post Facto Subclass comprises all persons who were required to register under Michigan's SORA from January 1, 2006, the day the first unconstitutional SORA amendment went into effect, through the present day, who otherwise would not have been required to register or be subject to the unconstitutional amendments - but for the unconstitutional amendments; and who were required to register or comply with unconstitutional amendments and who paid funds to any governmental unit for registration fees.

   b. Housing Subclass – The Housing Subclass comprises all persons subjected to the pre-2021 SORA who were forced to move from their residence or denied housing due to the unconstitutional SORA provision prohibiting them from residing within a student safety zone.

   c. Employment Subclass – The Employment Subclass comprises all persons subjected to the pre-2021 SORA who were either denied a job

or were terminated from a job due to the unconstitutional SORA provision prohibiting them from working within a student safety zone.

d. Incarcerated or Detained Subclass – The Incarcerated or Detained Subclass comprises all those individuals who were arrested, charged, and/or convicted for violations of the unconstitutional SORA provisions.

54. The putative classes satisfy the requirements of Fed. R. Civ. P. 23(a).

55. First, the class and subclass are each so numerous that joinder of all members of the class is impracticable.

56. At any given time, there are approximately 44, 000 persons subject to registration under SORA. All of these individuals whom were required to register during the relevant time period, and who were subjected to the unconstitutional amendments, are members of the putative class.

57. Joinder is also impracticable because registrants are scattered all across the state.

58. Many registrants are indigent and would be unable to retain counsel to secure their rights under *Does I* and *Does II* absent a class action.

59. The names and number of class members and subclass members are ascertainable based on the defendants' records.

16

60. Proceeding under Rule 23 will promote the fair and efficient adjudication of this action because it will permit a large group of similarly-situated persons to procedure their common claims simultaneously in a single forum, without duplicating evidence, and save the additional effort and expense that would otherwise be necessary if their claims were brought through a series of individual actions.

61. Already dozens of Michigan registrants have filed SORA cases in a variety of state and federal courts seeking to enforce *Does I* and *Does II*. Judicial economy will be served by handling common issues related to compensation for the violation of Plaintiffs constitutional rights as provided for in *Does I* and *Does II,* through class-wide proceedings.

62. Second, there are question of law or fact common to the proposed class. The common questions of law and fact include, but are not limited to:

a. Did Defendant's require class members to comply with unconstitutional laws;

b. At what point did Defendants become aware of the unconstitutionality of the laws being enforced;

c. What steps Defendants took, to alert class members and individuals over whom Defendants maintained control of enforcement activity of the unconstitutionality of the laws being enforced;

d.  When such steps were taken;

e.  How such steps were taken;

f.  When enforcement of unconstitutional laws ceased; and

g.  What is the appropriate matrix of compensation for class members for the violation of their constitutional rights?

63. Third, the claims asserted by plaintiffs are typical of the claims of the class members whom they seek to represent. The same common course of conduct by the defendants gave rise to the plaintiffs' and the class members' claims.

64. Fourth, the plaintiffs will fairly and adequately protect the interests of the respective class members. The plaintiffs' interests are coincident with, and not antagonistic to, those of the respective class members.

### Incorporation of the Facts Set Forth Above

65. For all the legal claims set forth below, the plaintiffs re-allege the facts described in the paragraphs above and incorporate those facts by reference into the legal claims.

### CLAIMS FOR RELIEF

### COUNT 1

### 42 U.S.C. § 1983: Violation for Vagueness of the 14th Amendment Due Process Clause

66. Plaintiffs repeat and re-allege the allegations of the above paragraphs.

67. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutional. As a matter of due process, statutory requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess as to their meaning and will not differ as to their application.

68. For the reasons set out in this Court's decision in Does #1-5 v. Snyder, 101 F. Supp. 3d 672 (E.D. Mich. 2015) and the order of this Court in February 2020, the following provisions of SORA were unconstitutionally vague:

    a.  The prohibition on working within a student safety zone, M.C.L. § 28.733-734;

    b.  The prohibition on loitering within a student safety zone, M.C.L § 28.733-734;

    c.  The prohibition on residing within a student safety zone, M.C.L. § 28.733 & § 28.735;

    d.  The requirement to report "[a]ll telephone numbers…routinely used by the individual, M.C.L. § 28.727(1)(h);

    e.  The requirement to report "[a]ll electronic mail addresses and instant message addresses…routinely used by the individual, M.C.L. § 28.727(1)(1); and

    f.  The requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel…regularly operated by the individual," M.C.L. § 28.727(l)(j).

69. The plaintiffs bring the due process vagueness claim for themselves and on behalf of the putative class members.

70. At all times that the unconstitutional provisions were in effect, Plaintiffs and members of the putative class sustained injury and damages as a result of the deprivation of their constitutional rights.

    a.  Members of the Employment Subclass lost, or were denied, employment due to the unconstitutional school zone employment restrictions.

    b.  Members of the Housing Subclass lost, or were denied, housing due to the unconstitutional school zone residency restrictions.

    c.  Members of the Incarcerated or Detained Subclass were arrested, charged, and/or convicted for violations of the unconstitutionally vague provisions.

71. Furthermore, Defendants continued to enforce the provisions of this statute even after the courts had declared it unconstitutional.

## COUNT 2

### 42 U.S.C. § 1983: Violation of the First Amendment

72. The First Amendment prohibits abridgment of the freedom of speech. The Fourteenth Amendment incorporates the First Amendment against the states.

73. For the reasons set out in this Court's decision in Does #1-5 v. Snyder, 101 F. Supp. 3d 672 (E.D. Mich. 2015), and 101 F. Supp. 3d 722 (E.D. Mich. 2015), the following provisions of SORA violate the First Amendment:

   a. The requirement "to report in person and notify the registering authority…immediately after…[t]he individual…establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," M.C.L. § 28.725(1)(f); and

   b. The retroactive incorporation of the lifetime registration requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual…and all login names or other identifiers used by the individual…and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," M.C.L. § 28.727(1)(i).

74. All Plaintiffs were required to provide personal information including E-Mail addresses, login names, and other information regarding internet communications and postings to the Michigan State Police in violation of the First Amendment.

75. Plaintiffs bring the First Amendment claim for themselves and on behalf of the primary class.

## COUNT 3

### 42 U.S.C. § 1983: Violation of the Ex Post Facto Clause

76. The retroactive application of the 2006 and 2011 amendments violated the Ex Post Facto Clause of the U.S. Constitution, Art. I, § 10, cl. 1, under the Sixth Circuit's decision in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) ("*Does I*").

77. Under the Sixth Circuit's decision in Does I, the 2006 and 2011 SORA were unconstitutionally applied to plaintiffs Joh Does #1-5.

78. The 2011 SORA amendments cannot be severed from SORA because the unconstitutional portions are so entangled with the other sections that they cannot be removed without adversely affecting the operation of the act. As a result, there is no statute in effect that lawfully imposes restrictions and obligations based on conduct occurring before April 12, 2011.

79. The defendants are unlawfully required plaintiffs and members of the putative class, to comply with SORA even though the statute was unconstitutional and deprived them of their rights.

80. The enforcement of the unconstitutional ex post facto provisions of the 2006 and 2011 SORA included the requirement that Plaintiffs paid an annual $50 registration fee.

81. Additionally, members of the Incarcerated or Detained Subclass who were unconstitutionally arrested, charged, and/or convicted for failure to register suffered a significant deprivation of their liberty and takings of their property due to violations of the Ex Post Facto Clause.

82. The plaintiffs bring the ex post facto claim for themselves and on behalf of the ex post facto subclass.

## **REQUEST FOR RELIEF**

Wherefore, the plaintiffs, for themselves and for the putative class members whom they wish to represent, ask the Court to grant the following relief:

A. Rule that this action may be maintained as a class action under Rule 23(b)1 and Rule 23(b)3 of the Federal Rules of Civil Procedure, and certify:

83. A "primary class," defined as those persons who were required to register under Michigan's SORA from January 1, 2006, the day the first unconstitutional SORA amendment went into effect, through March 24, 2021 when the Michigan Legislature amended SORA;

B. An "Ex Post Facto Subclass" defined as those persons who were required to register under Michigan's SORA from January 1, 2006, the day the first unconstitutional SORA amendment went into effect, through the present day, who otherwise would not have been required to register or be subject to the unconstitutional amendments - but for the unconstitutional amendments; and who were required to register or comply with unconstitutional amendments, between March 13, 2017 and the present, who paid funds to any governmental unit for registration fees;

C. A "Housing Subclass" defined as all persons subjected to the pre-2021 SORA who were forced to move from their residence or denied housing due to the unconstitutional SORA provision prohibiting them from residing within a student safety zone;

D. An "Employment Subclass" defined as all persons subjected to the pre-2021 SORA who were either denied a job or were terminated from a job due to the unconstitutional SORA provision prohibiting them from working within a student safety zone;

E. An "Incarcerated or Detained Subclass" defined as all persons who were arrested, charged, and/or convicted for violations of the unconstitutional SORA provisions;

F.  Appoint the plaintiffs' counsel Alyson Oliver, Paul Matouka and Cameron Bell as class counsel.

G.  Award Plaintiffs money damages pursuant to 42 U.S.C.§ 1983 for deprivation of their constitutional rights in an amount to be determined at trial, including compensatory and punitive damages.

H.  Award Plaintiffs costs and reasonable attorneys fees; and

I.  Whatever other such relief that the Court deems appropriate and just.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial.

Respectfully Submitted,

OLIVER LAW GROUP P.C.

Date: August 17, 2021

/s/ Alyson Oliver
Alyson Oliver (P55020)
Cameron Bell (P81934)
Christopher Brown (P83439)
Paul Matouka (P84874)
Attorneys for Plaintiffs
1647 W. Big Beaver Rd.
Troy, MI 48084
T: (248) 327-6556
E: notifications@oliverlawgroup.com

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES #1-6, on behalf of themselves
and all others similarly situated,

          Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPAR, Director of the Michigan State
Police, in their official capacities

          Defendants.

File No. 16-13137

Hon. Robert H. Cleland

Mag. J. David R. Grand

## FINAL JUDGMENT

Whereas Plaintiffs filed a complaint in August 2016 and subsequently filed amended complaints challenging the constitutionality of the version of Michigan's Sex Offenders Registration Act, Mich. Comp. Laws § 28.721 *et seq*., in effect at the time ("pre-2021 SORA" or "old SORA");

Whereas this Court on September 11, 2018, entered a stipulated order certifying a primary class of all people required to be registered under Michigan's pre-2021 SORA, and two "ex post facto" subclasses of individuals with offenses predating January 1, 2006, and April 12, 2011, R. 46;

Whereas this Court on May 23, 2019, entered a stipulated order declaring the 2006 and 2011 SORA amendments to be unconstitutional as to the ex post facto

1

subclasses, R. 55;

Whereas this Court on February 14, 2020, issued an opinion and order granting Plaintiffs' motions for summary judgment as to Counts I through IV of the second amended complaint, and ordered Defendants to provide notice of the Court's ruling to all registrants, and all law enforcement officials and prosecuting attorneys tasked with the enforcement of SORA, R. 34;

Whereas this Court on April 6, 2020, subsequently entered an interim order suspending both enforcement of the old SORA and entry of the final judgment during the COVID-19 pandemic, R. 91;

Whereas the Michigan Legislature thereafter passed, and the Michigan governor signed, Michigan Public Act 295 of 2020 (HB 5679), which repealed certain provisions and amended other provisions of the old SORA and which took effect on March 24, 2021 ("new SORA")[1];

Whereas this Court on June 21, 2021, issued an opinion and order granting in part Plaintiffs' Motion for Judgment and Amended Motion for Judgment, R. 121;

This Court now enters final judgment as follows:

---

[1] As used in this judgment, the "new SORA" refers to the version of Michigan's Sex Offenders Registration Act, M.C.L. § 28.721 *et seq.*, in effect as of March 24, 2021, including both sections that were and were not amended by Public Act 295 of 2020.

1. IT IS ORDERED that Plaintiffs' motion for declaratory relief (R. 62) is GRANTED. Michigan's pre-2021 SORA is DECLARED to be punishment. Thus, the ex post facto application of the 2006 and 2011 amendments is DECLARED unconstitutional, the 2011 amendments are DECLARED not severable from the pre-2021 SORA, and the pre-2021 SORA is therefore DECLARED NULL AND VOID as applied to conduct that occurred before March 24, 2021 to members of the ex post facto subclasses (defined as all people who are or will be subject to registration under SORA, who committed their offense or offenses requiring registration prior to April 12, 2011, and who have committed no registrable offense since). This declaration does not prevent the enforcement of any provision in the new SORA (as defined above and whose constitutionality was not at issue in this litigation) for conduct that occurs on or after March 24, 2021, against any registrant, including members of the ex post facto subclasses.

2. IT IS FURTHER ORDERED that Plaintiffs' motion for injunctive relief (R. 62) is GRANTED. Defendants and their agents are permanently ENJOINED from enforcing ANY provision in the pre-2021 SORA against members of the ex post facto subclasses, for conduct that occurred before March 24, 2021. As the Legislature has now amended SORA, and as this litigation did not address the constitutionality of the new SORA (as defined above), this injunction does not enjoin

enforcement of any provision in the new SORA (as defined above) against members of the ex post facto subclasses.

3. IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment (R. 75) is GRANTED. The following provisions of the pre-2021 SORA are DECLARED unconstitutional, and Defendants and their agents are permanently ENJOINED from enforcing them against any registrant for any violation that occurred before March 24, 2021:

    (a)  Provisions Void for Vagueness:

        i.   the prohibition on working within a student safety zone, Mich. Comp. Laws §§ 28.733–734;

        ii.  the prohibition on loitering within a student safety zone, Mich. Comp. Laws §§ 28.733–734;

        iii. the prohibition on residing within a student safety zone, Mich. Comp. Laws §§ 28.733, 28.735;

        iv. the requirement to report "[a]ll telephone numbers . . . routinely used by the individual," Mich. Comp. Laws § 28.727(1)(h);

        v.  the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel . . . regularly operated by the individual," Mich. Comp. Laws § 28.727(1)(j).

    (b) Provisions Void for Strict Liability:

        i.   under the Due Process Clause of the U.S. Constitution, the old SORA must be interpreted as incorporating a knowledge requirement.

    (c) Provisions Void under the First Amendment:

     i.    the requirement to "report in person and notify the registering authority . . . immediately after . . . [t]he individual . . . establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws § 28.725(1)(f);

    ii.    the requirement to report "[a]ll telephone numbers . . . routinely used by the individual, Mich. Comp. Laws § 28.727(1)(h);

   iii.    the requirement to report "[a]ll electronic mail addresses and instant message addresses . . . routinely used by the individual," Mich. Comp. Laws § 28.727(1)(l);

   iv.    the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws § 28.727(1)(i).

As this litigation did not address the constitutionality of the new SORA (as defined above), this injunction does not enjoin enforcement of any provision in the new SORA (as defined above).

    4.  IT IS FURTHER ORDERED that enactment of the new SORA does not moot this case. Absent this judgment, registrants could face prosecution for conduct that occurred before March 24, 2021, under provisions of the old SORA that have been found unconstitutional, or whose enforcement was barred while the Interim Order, R. 91, was in effect.

5. IT IS FURTHER ORDERED (consistent with this Court's Interim Order Delaying Entry of Final Judgment, Preliminarily Enjoining Reporting Requirements, and Directing Publication, R. 91, and this Court's Opinion and Order holding that registrants cannot be held strictly liable for old SORA violations, R. 84, which are incorporated by reference), that Defendants and their agents are permanently ENJOINED from enforcing registration, verification, school zone, and fee violations of the old SORA that occurred from February 14, 2020, until March 24, 2021. The Interim Order, R. 91, is hereby terminated. (This injunction does not prevent the enforcement of the new SORA (as defined above) for conduct that occurred on or after March 24, 2021.)

6. IT IS FURTHER ORDERED that Defendants shall PROVIDE NOTICE of this judgment to all registrants and to all law enforcement officials and prosecuting attorneys tasked with the enforcement of SORA within 21 days of the Court approving the notices and notice process. Within 21 days of entry of this judgment the parties shall submit for the Court's approval a joint proposed process for notice and proposed notices for registrants, prosecutors and law enforcement. If the parties cannot agree, they shall provide their respective proposed notice process and proposed notices.

7. IT IS FURTHER ORDERED that to enable post-judgment monitoring, Defendants shall provide class counsel with a class list and information about class

members, consistent with this Court's June 21, 2021, Opinion and Order, R. 121. The parties have informed the Court that, given the complexities associated with obtaining certain types of data, the parties need time to assess the capabilities of the SORA database to generate such data, and then time to discuss what information will be provided, in what format, and on what timeline. Therefore, the parties shall have 21 days to submit a proposed order, or if they cannot agree, their respective proposed orders, regarding the provision of a class list plan for the Court's approval.

8. IT IS FURTHER ORDERED that any non-public information about individual registrants contained in the class list shall be confidential and shall not be further disclosed by class counsel, except that class counsel are authorized to share such information as needed to resolve an individual class member's situation, including with that class member and his/her counsel. Such information about individual registrants shall not be used for any purpose other than to represent the individual class members or the class.

9. IT IS FURTHER ORDERED that provision of the above information pursuant to paragraphs 7 and 8 shall not be deemed a violation of any law or regulation that might otherwise be read to protect the confidentiality of such information, including Mich. Comp. Laws. §§ 28.214, 28.728, 28.730.

10. IT IS FURTHER ORDERED that, in the interests of judicial economy and the conservation of resources that might otherwise be expended on litigation as to

attorneys' fees and costs, the matter of attorneys' fees is referred to the magistrate judge for a settlement conference. Within 60 days after the conclusion of all appeals in this case, Plaintiffs will present a demand for fees and costs, with appropriate documentation, to Defendants, and Defendants will have 21 days to respond, after which, if the parties have not reached agreement, the magistrate judge will hold a settlement conference. If the parties are unable to resolve the attorney fee issues, the magistrate judge shall notify the Court that negotiations and mediation have failed, and Plaintiffs will then have 60 days to file a petition for fees and costs. For purposes of this order, "the conclusion of all appeals" means the latest of:

(a) the expiration of 30 days to file a notice of appeal to the United States Court of Appeals for the Sixth Circuit of any final order of this Court, including this one and any final order of this Court after remand, in the event the case is remanded by a higher court;

(b) the expiration of time to file a petition for certiorari to the United States Supreme Court following a final decision by the Sixth Circuit on appeal from any final order of this Court;

(c) the denial of a petition of certiorari by the United States Supreme Court; or

(d) the disposition of this case by the United States Supreme Court, if the Supreme Court grants a petition for certiorari.

Rather than file a separate bill of costs, the parties shall include the taxable items with the other costs for which they seek an award on the schedule established in this order.

12. IT IS FURTHER ORDERED that the Court retains jurisdiction to ensure compliance with its orders and to resolve any post-judgment issues, including attorneys' fees and any issues related to notice.[2]

SO ORDERED.

s/Robert H. Cleland
Hon. Robert H. Cleland
U.S. District Judge

Dated: August 4, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 4, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                              /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\16-13137.DOESII.FinalJudgment.AAB.docx

---

[2] Parties shall first meet and confer regarding any issue that may require an amended judgment. If the parties cannot agree, a motion to modify the judgment may be filed under Fed. R. Civ. Pro. 60(b). *See* R. 121, PageID.2457 n.3.